UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA
2006 FEB 21  AM 11:56
LORETTA G. WHYTE
CLERK

| | | |
|---|---|---|
| REVEREND C.S. GORDON, JR., OF NEW ZION BAPTIST CHURCH, J. MICHAEL MALEK, DARRYL MALEC-WILEY, WILLIE WEBB, JR., MAISON ST. CHARLES, L.L.C., D/B/A QUALITY INN, MAISON ST. CHARLES, | * | CIVIL CASE NO. _____ |
| | * | SECTION ___ **06 - 0846** |
| **Plaintiffs** | * | |
| v. | * | **SECT. K MAG. 1** |
| | * | |
| ENTERGY NEW ORLEANS, INC. ENTERGY CORPORATION, ENTERGY POWER, INC. ENTERGY SERVICES, INC. and SYSTEM FUELS, INC. | * | |
| **Defendants** | * | |
| * * * * * * * * | | |

## NOTICE OF REMOVAL

Entergy New Orleans, Inc. (the "debtor" or "ENOI"), gives this notice and removes the civil case captioned *The Reverend C.S. Gordon, Jr, et al. v. Entergy New Orleans, Inc., et al.*, Docket No. 99-5707, pending in the Civil District Court for the Parish of Orleans, State of Louisiana (the "Gordon Suit"), to the United States District Court for the Eastern District of Louisiana pursuant to 28 U.S.C. § 1452, 28 U.S.C. § 1334, and Federal Rule of Bankruptcy Procedure 9027. In support of this removal, ENOI represents:

### Background

1.

On April 8, 1999, Plaintiffs initiated the Gordon Suit by filing a Class Action

Fee $250.00
Process_____
X Dktd_____
CtRmDep_____
Doc. No _____

Petition against ENOI, Entergy Corporation, Entergy Power, Inc., and Entergy Services, Inc., asserting a variety of claims based upon alleged breaches of regulatory policies and state law.

2.

On March 23, 2005, Plaintiffs filed a Second Supplemental and Amending Class Action petition naming System Fuels, Inc., as an additional defendant in the Gordon Suit.

3.

On September 23, 2005, ENOI filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Louisiana, bearing case number 05-17697 ("Bankruptcy Case").

**Federal Bankruptcy Jurisdiction**

4.

28 U.S.C. §§1334(a) and (b) give federal district courts bankruptcy jurisdiction over all "cases under Title 11," "all civil proceedings arising under Title 11," and all proceedings "arising in or related to a case under Title 11."

5.

The matters in dispute in the Gordon Suit could conceivably have an effect on the estate being administered in the Bankruptcy Case; thus, the Gordon Suit is a related, non-core proceeding over which the Court has federal bankruptcy removal jurisdiction. *See* 28 U.S.C. §§ 157(b), 1334(b) and 1452; *see also In re Wood,* 825 F.2d 90 (5th Cir. 1987).

**The Procedural Requirements of Removal Have Been Satisfied**

6.

ENOI is a party to the Gordon Suit.  Therefore, ENOI is authorized to file this

Notice of Removal pursuant to 28 U.S.C. § 1452.

7.

The Gordon Suit was filed prior to the Bankruptcy Case; consequently, the
automatic stay applies to that proceeding. To date, the automatic stay has not been lifted
with respect to the Gordon Suit. Thus, removal is timely pursuant to Federal Rule of
Bankruptcy Procedure 9027(a)(2).[1]

8.

The United States District Court for Eastern District of Louisiana is the federal
judicial district embracing the State Court where the Gordon Suit is pending. 28 U.S.C.
§98(a). Therefore, venue is proper in this District under 28 U.S.C. § 1452 and Federal
Rule of Bankruptcy Procedure 9027(a)(1).

9.

This Court has original subject matter jurisdiction over this case pursuant to
28 U.S.C. § 1334. Removal is proper pursuant to 28 U.S.C. § 1452.

10.

As required by Federal Rule of Bankruptcy Procedure 9027(a), ENOI has
attached as Exhibit 1 a copy of all process issued and pleadings filed in the Gordon Suit.

11.

Pursuant to Federal Rule of Bankruptcy Procedure 9027(b), undersigned counsel
certifies that a copy of the original Notice of Removal will be served promptly on all

---

[1] On October 27, 2005, an order (P-174) was entered in the Bankruptcy Case stating:
   in accordance with Rule 9006(b) of the Federal Rules of Bankruptcy Procedure,
   extending the period within which the Debtor may seek to remove civil actions pending
   on the date of the commencement of its Chapter 11 Case, pursuant to 28 U.S.C. § 1452
   and Rule 9027(a)(2) of the Federal Rules of Bankruptcy Procedure, be and the same is
   hereby extended to February 20, 2006.

parties to the Gordon Suit and filed with the Clerk of Court for the Orleans Parish Civil District Court.

**Referral and Consent to Entry of Judgment**

12.

The Gordon Suit should be referred to the Bankruptcy Court, *see* Local Civil Rule 83.4.1, and ENOI consents to entry of final orders or judgment by the bankruptcy judge

**WHEREFORE,** Entergy New Orleans, Inc., prays that its Notice of Removal be deemed good and sufficient and that the Gordon Suit be removed from the Civil District Court for the Parish of Orleans to the United States District Court for the Eastern District of Louisiana.

Respectfully submitted,

R/ PATRICK VANCE (#13008)
ELIZABETH J. FUTRELL (#5863)
NAN ROBERTS EITEL (#19910)
TARA G. RICHARD (#26356)
JOSHUA J. LEWIS (#29950)
Jones, Walker, Waechter, Poitevent,
   Carrere & Denegre, L.L.P.
201 St. Charles Avenue, 49th Floor
New Orleans, La. 70170
(504) 582-8000 (telephone)
(504) 589-8150 (facsimile)

Attorneys for Entergy New Orleans, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have on the $\underline{21}$ day of February, 2006, forwarded a copy of the above and foregoing *Notice of Filing of Notice of Removal* to opposing counsel by United States mail, properly addressed and first class postage prepaid, to:

Edwin R. Murray, Esq.
Michael C. Darnell, Esq.
MURRAY, DARNELL & ASSOCIATES, L.L.C.
1540 North Broad Street
New Orleans, Louisiana 70119

Bob F. Wright, Esq.
James Parkerson Roy, Esq.
DOMENGEAUX, WRIGHT, ROY & EDWARDS
{556 Jefferson Street
Jefferson Towers, Suite 500]
P.O. Box 3668
Lafayette, Louisiana 70502-3668

J. Kenton Parsons, Esq.
Luke F. Piontek, Esq.
ROEDEL, PARSONS, KOCH, BLACHE,
  BALHOFF & McCOLLISTER
Jefferson-Brentwood Building
8440 Jefferson Highway, Suite 301
Baton Rouge, Louisiana 70809-7652

Walter C. Thompson, Jr., Esq.
Mark P. Seyler, Esq.
James M. White, III, Esq.
BARKLEY & THOMPSON, L.C.
1515 Poydras Street, Suite 2350
New Orleans, Louisiana 70112

Ewell E. Eagan, Esq.
Marcy V. Massengale, Esq.
Wendy Hickok Robinson, Esq.
GORDON, ARATA, MCCOLLAM, DUPLANTIS
  & EAGAN, L.L.P.
201 St. Charles Ave., 40th Floor
New Orleans, Louisiana, 70170-4000

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 99-5707        DIVISION " "        DOCKET NO.
                   (SECTION    )

REVEREND C.S. GORDON, JR., J. MICHAEL MALEC,
DARRYL MALEK-WILEY, WARREN WEBB, SR., WARREN WEBB,
and MAISON ST. CHARLES, L.L.C. d/b/a
QUALITY INN MAISON ST. CHARLES

versus

ENTERGY NEW ORLEANS, INC.,
ENTERGY CORPORATION, ENTERGY SERVICES, INC. and
ENTERGY POWER, INC.

Filed: _____

                              _____
                                   Deputy Clerk

## CLASS ACTION PETITION

Now into Court come plaintiffs, Reverend C.S. Gordon, Jr., J. Michael Malec, Darryl Malek-Wiley (formerly Darryl E. Wiley), Warren Webb, Sr., Warren Webb, and Maison St. Charles, L.L.C. d/b/a Quality Inn Maison St. Charles, individually and on behalf of a class of all others similarly situated, and they do hereby respectfully allege that:

1.

Each of the named plaintiffs, appearing individually and on behalf of the class (and/or sub-classes) they seek to represent, is a person of the full age of majority domiciled in the Parish of Orleans, State of Louisiana, except Maison St. Charles, L.L.C. d/b/a/ Quality Inn Maison St. Charles, which is a limited liability company organized and existing under the laws of the State of Louisiana, and which is domiciled and has its registered principal business establishment in the Parish of Orleans.

2.

Made defendants herein are:

(a) Entergy New Orleans, Inc. ("ENO"), formerly known as New Orleans Public Service Inc., or "NOPSI", a Louisiana corporation that has its registered office and corporate domicile in the Parish of Orleans;

(b) Entergy Corporation ("Entergy"), formerly known as Middle South Utilities, Inc., a Delaware corporation that has its

principal place of business and its principal Louisiana business establishment in the Parish of Orleans;

(c)  Entergy Power, Inc. ("EPI"), a Delaware corporation that has its corporate domicile in the State of Arkansas; and

(d)  Entergy Services, Inc. ("ESI"), formerly known as Middle South Services, Inc., a Delaware corporation that has its principal place of business and its principal Louisiana business establishment in the Parish of Orleans.

3.

Defendant ENO is, and at all material times has been, an electric generation utility company operating within the State of Louisiana and regulated by the Council of the City of New Orleans ("City Council"). ENO is, and at all material times has been, a wholly-owned subsidiary of defendant Entergy, an investor-owned public utility holding company. Defendants ENO, Entergy, ESI, and EPI agreed to and did perform the acts and conduct at issue herein, and/or they acted in concert, combination, collusion, or conspiracy with respect thereto.

4.

ENO's service area is, and at all material times has been, the Parish of Orleans (except Algiers), within the State of Louisiana.

5.

Defendants ENO, Entergy, ESI, and EPI are liable, jointly, severally, and in solido, unto each of the plaintiffs, and unto each of the members of the class, for restitution of ascertainable losses of money, including overcharges, and for such damages as may be reasonable in the premises, including treble damages, as provided by Louisiana law, plus interest at the legal rate from the date or dates on which the obligations sued upon arose, or alternatively, from the date of judicial demand, together with reasonable attorneys' fees, and all costs of these proceedings, as well as declaratory and injunctive relief, for the following, to-wit:

6.

(a) Plaintiffs are informed and believe that at all relevant times one or more defendants agreed or conspired with one or more other defendants or others to act in concert or combination to do the acts alleged below; that pursuant to this agreement, combination, or conspiracy defendants intended to and did participate in the acts, events, practices, and courses of conduct alleged below to further the objectives of the agreement, combination, or conspiracy to injure plaintiffs and the class; and that these acts and conduct were the proximate cause of the injury and damages that plaintiffs and the class suffered.

(b) Alternatively, plaintiffs are informed and believe that at all relevant times each defendant was within the course and scope of its authority, acting as the agent or representative of one or more of the other defendants, and authorized, directed, or ratified the acts of one or more of the other defendants.

7.

Plaintiffs bring this lawsuit as a class action, pursuant to Articles 591, et seq., of the Louisiana Code of Civil Procedure, on behalf of the class (and/or sub-classes) of all persons, including natural persons and entities, within the relevant geographic market (defined as defendant ENO's above-described service area, wholly within the State of Louisiana), who, at any time during the period in which defendants' unlawful and wrongful acts occurred or continue to occur, have been or are ratepayers of ENO, and who, as residential or business customers of ENO, have incurred or paid overcharges for electricity sold by, or electric service provided by, ENO without advance approval by the City Council of the costs included in ENO's fuel adjustment clauses, or alternatively, the portion of those unapproved items and amounts which were included as purported costs but which were not prudently incurred, or which did not produce just and reasonable rates, or which were otherwise improperly included.

8.

Plaintiffs are informed and believe that the total number of persons who are currently residential or business customers of defendant ENO is in excess of 180,000 persons, even without considering the additional unknown number of persons who were but no longer are customers of ENO. Accordingly, the class is so numerous that joinder of all members is impracticable.

9.

There are questions of law or fact common to the class, including, but not limited to, the following:

(a) whether ENO failed to obtain full review and approval by the City Council of any and all purported costs included in its fuel adjustment clauses, and if so, whether all such charges should be refunded to ratepayers;

(b) whether ENO included in its fuel adjustment clauses any items or amounts other than direct fuel and generation-dependent costs actually incurred, and if so, whether all such charges should be refunded to ratepayers;

(c) alternatively, if any of the direct fuel and generation-dependent costs actually incurred and passed through to ratepayers by ENO in its fuel adjustment clauses are not automatically disallowed for failure to obtain review and approval by the City Council, then whether in any event such costs were not prudently incurred, produced unjust or unreasonable rates, or were otherwise improperly included in the fuel adjustment clauses, and if so, whether all such charges should be refunded to ratepayers;

(d) whether defendants ENO, ESI, and EPI, and their parent, defendant Entergy, manipulated rates charged to plaintiffs and the class members by inflating the purported costs of electric power passed through to the customers by way of the fuel adjustment clauses;

(e) whether defendant ENO intentionally or negligently failed to procure readily available supplies of electric power from non-affiliates at prices which were substantially below the prices actually paid by ENO to its affiliates for electric power purchased and included in ENO's fuel adjustment clause filings;

(f) whether defendant ENO intentionally or negligently failed to procure readily available supplies of electric power from non-affiliates at prices which were substantially below the costs of power generated by ENO at its generation facilities and included in ENO's fuel adjustment clause filings;

(g) with respect to defendant ENO's overcharges (including all fuel costs passed through to ratepayers by way of the fuel adjustment clauses without City Council approval, and all items and amounts included for costs that were not prudently incurred or that would not have produced just and reasonable rates), whether defendants ENO, ESI and/or Entergy manipulated rates charged to plaintiffs and the class members by inflating the purported costs passed through to the customers by way of the fuel

- 4 -

adjustment clauses, as a result of either the failure to obtain City Council approval or the inclusion of items or amounts other than direct fuel and generation-dependent costs actually incurred;

(h) whether defendants unlawfully and/or wrongfully fixed prices, abused their monopoly market power, unreasonably restrained trade, and/or engaged in unlawful price discrimination in the transmission, distribution, and sale of electric power to plaintiffs and the class, and/or have agreed, combined, or conspired to do so, and/or attempted to do so, in violation of the Louisiana antitrust laws and other laws as alleged;

(I) whether defendants breached the ordinances, resolutions, rules, orders, or policies of the City Council, to the direct and proximate injury of plaintiffs and the class;

(j) whether defendants fraudulently, negligently, or intentionally misrepresented, or suppressed, concealed, and/or omitted to disclose information material to the rates and charges for electric power and service provided to plaintiffs and the class, and/or committed other fault, error, or negligence;

(k) whether defendants breached their contractual or quasi-contractual obligations, and/or their fiduciary duties to plaintiffs and the class and/or have been unjustly enriched at the expense of and to the detriment of plaintiffs and the class;

(l) whether restitution of overcharges, and an award of damages, treble damages, and injunctive and declaratory relief are available to the ratepayers;

(m) the acts of defendants in furtherance of the alleged illegal and/or unlawful conduct; and

(n) the period of time over which the unlawful and wrongful acts and omissions occurred.

10.

The claims of the representative plaintiffs are typical of the claims of all class members. Plaintiffs seek relief that is common to the class in the form of restitution of overcharges in ascertainable amounts and an award of monetary damages, including treble damages, as well as declaratory and injunctive relief. Plaintiffs will fairly and adequately protect the interests of the class of all ratepayers similarly situated. The class is or may be defined objectively in terms of ascertainable criteria. In addition, the prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications; and/or the defendants have acted on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; and/or the questions of law or fact common

- 5 -

to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

11.

Defendant ENO, at all material times, has been and is engaged in the generation, sale, transmission, and distribution of electricity within its aforesaid service area, the Parish of Orleans (except Algiers), State of Louisiana. ENO controls 100% of, and it holds monopoly power over, the electricity delivered to plaintiffs and the members of the class in the relevant geographic market consisting of ENO's service area.

12.

As the electric generation utility company operating in the Parish of Orleans, State of Louisiana, ENO for many years has used so-called fuel adjustment clauses ostensibly to report monthly to the City Council and/or the Department of Utilities of the City of New Orleans ("Department of Utilities") the fluctuating costs of electric power purchased or generated by ENO and fuel used in ENO's generation of electricity, which costs are passed through to its ratepayers by inclusion in ENO's charges for the electricity it sells to its customers. The electric fuel adjustment methodology employed by ENO was developed in accordance with the guidelines of the Louisiana Public Service Commission ("LPSC"). The City Council approved ENO's use of the methodology before the transfer of regulatory authority to the LPSC, effective January 1, 1982. The methodology remained unchanged throughout the period during which the LPSC regulated ENO, and has not changed since the City Council resumed regulation of ENO in May 1985.

13.

The fuel adjustment clause is intended to permit ENO to recoup its fluctuating fuel and power costs on an ongoing basis without the necessity of conducting a full rate case at the City Council for approval of a rate increase. The fuel adjustment clause is not designed to allow ENO to earn a profit; rather, it is a recoupment

device designed to permit a dollar-for-dollar recovery of fluctuations in ENO's prudently-incurred fuel costs.

14.

The use of periodically adjusting fuel clauses is an exception to traditional regulation under which a utility is prohibited from charging any rate other than the last rate approved for it by the regulator in a base rate case.  Because fuel adjustment clauses permit ENO to make monthly adjustments in its charges to customers without the scrutiny applied in base rate proceedings, the City Council retains jurisdiction of, and it has the ability to exercise full rate-making review over, the costs passed through to ratepayers in fuel adjustment clauses.  The City Council may determine whether costs passed through to ratepayers were prudently incurred by the utility, produced just and reasonable rates, and were properly included in the fuel adjustment clause.

15.

Only direct fuel and generation-dependent costs actually incurred are eligible for recovery through the fuel clause.  The fuel adjustment clause process is not a supplement to, and it should not be utilized by a utility to avoid, the normal base rate-making process for incremental base rate costs with full consideration of all relevant issues.

16.

Under the regulatory procedures in place at the City Council, ENO has the burden of proving that the costs passed through its fuel adjustment mechanism were prudently incurred, produced just and reasonable rates, were necessary to the provision of electric service, and were eligible for recovery through the fuel adjustment clause.

17.

To the extent a utility manipulates or abuses the fuel adjustment clause, ratepayers are harmed.

18.

Defendant ENO's fuel adjustment clause filings have not been subjected to a full hearing and review by either the City Council

or Department of Utilities, but have been reviewed only for mathematical accuracy. ENO has not caused any public fuel adjustment hearings before the City Council to take place. Under the rule of Daily Advertiser v. Trans La. 612 So. 2d 7 (La. 1993), because defendant ENO's fuel cost adjustments were not subjected to antecedent reasonableness review and are not rates made by the City Council, they remain susceptible to subsequent examination and modification by the City Council. Similarly, ENO's customers, including plaintiffs and the members of the class, are not precluded from challenging defendants' manipulation of the fuel adjustment clauses and inflation of the charges passed through to the ratepayers by that means.

19.

Each month, ENO has filed its fuel adjustments data with the Department of Utilities. The Department of Utilities has accepted ENO's filings but has reserved its right to recommend to the City Council that the fuel adjustments be reviewed, revised, adjusted, or otherwise corrected.

20.

In compliance with the procedures established by the Louisiana Supreme Court in Daily Advertiser v. Trans La, 612 So. 2d 7 (La. 1993), plaintiffs are filing a complaint with the City Council to seek initiation of a proceeding to review ENO's fuel adjustment clauses. Plaintiffs will request that this Court retain jurisdiction of the present class action pending completion of the City Council proceeding or the further orders of the Court, so that the City Council may have an opportunity first to establish the amount of the overcharges at issue, and plaintiffs may then seek judgment for damages, including treble damages, in this class action.

### Illegal and/or Improper Charges Included
### In ENO's Fuel Adjustment Clause Filings

21.

Plaintiffs are informed and believe that ENO, with the knowledge and consent of and/or without objection from ESI and/or

Entergy, has improperly included within its fuel adjustment clause calculations certain costs which are non-fuel costs not includable within a public utility's fuel adjustment clause filings.

22.

To illustrate the nature of the overcharges, plaintiffs show that ENO's fuel adjustment clause filings for six operating months randomly selected -- October 1987, October 1990, October 1994, October 1995, November 1995, and October 1997 -- reflect that ENO improperly included "period costs", decontamination and decommissioning costs, and ad valorem taxes as purported "fuel costs" in its fuel adjustment clause filings. Together, these illegal charges are approximately $716,000.00, exclusive of interest, for those six months alone. The illegal "period costs" charges are discussed further in paragraphs 24 through 28 hereof.

23.

During the three-year period ending June 30, 1991, ESI and/or Entergy purchased power for resale to ENO from Arkansas Electric Cooperation ("AECC") under terms which provided for payment of a so-called energy "adder" to AECC. The adder was designed ostensibly to cover variable costs other than fuel costs incurred by AECC to supply the power. Approximately $2.5 million in the energy adders associated with the purchase of power from AECC was recovered by ENO in the electric fuel adjustment charge during the three-year period. During 1996, ENO improperly recovered approximately $1 million in energy adders associated with the purchase of AECC power. ENO did not obtain or seek approval from the City Council before including the AECC energy adder in its fuel adjustment filings.

### ENO Has Imprudently Purchased Fuel Oil From Its Affiliate at Grossly Excessive Prices

24.

From time to time, ENO has purchased fuel oil used in connection with power generation at its own power generation facilities. ENO purchases its fuel oil supplies exclusively from System Fuels, Inc. ("SFI"), an Entergy affiliate, which is jointly

- 9 -

owned by ENO and the other Entergy operating companies, Entergy
Louisiana, Inc., Entergy Arkansas, Inc., Entergy Mississippi, Inc.,
and Entergy Gulf States, Inc.  In addition to the commodity cost of
fuel oil actually sold and delivered to ENO, SFI assesses ENO
certain non-fuel "period" costs, ostensibly based on an allocation
of SFI's overhead costs incurred in connection with its fuel oil
procurement activities.  The period costs assessed to ENO have been
grossly excessive, causing the price paid by ENO for each barrel of
fuel oil purchased to be unreasonably high.

25.

For example, during the three-year period March 1986 through
April 1988, ENO purchased 1,624 barrels of fuel oil at a cost of
$36,968.00, or $22.76 per barrel.  Added to this charge, however,
were SFI period costs of approximately $5.8 million, or $3,583 per
barrel.  Thereafter, during the period ending June 30, 1991, ENO
paid SFI $7.5 million, or approximately $125 per barrel for fuel
oil and period costs.  During the three-year period ending June 30,
1994, ENO purchased fuel oil from SFI at an average cost of $31.26
per barrel, of which $17.44 was attributable to SFI period costs.

26.

SFI purports to allocate period costs among ENO and the other
Entergy operating companies on the basis of each company's oil
burning generation capability in relation to the Entergy system
total.  During the nine-year period ending June 30, 1994, ENO was
allocated approximately 14.5% of SFI's total period costs, even
though ENO actually purchased no more than 3.4% (and often less
than 1%) of the total fuel oil sold by SFI to the operating
companies during any three-year period.

27.

At all relevant times during the nine-year period ending June
30, 1994, SFI sold and ENO purchased, at the direction of defendant
Entergy, or with the knowledge and consent of and/or without
objection by Entergy, fuel oil supplies laden with grossly
excessive overhead charges, in lieu of cheaper, readily available
fuel oil supplies from non-affiliate sources.

28.

ENO's purchases of fuel oil from its affiliate SFI have been
imprudent, in view of the grossly excessive SFI period costs, and
were made without antecedent reasonableness review or approval by
the City Council.  As a consequence, ENO has systematically and
habitually imposed on plaintiffs and other ENO ratepayers charges
which have been unlawful, unjust, and unreasonable, in violation of
its contractual and fiduciary duties to plaintiffs and the class,
and in violation of the rules, orders, regulations, and policies of
the City Council and applicable Louisiana law.

### ENO Has Imprudently Relied on High-Cost, Self-Generated Power to Meet its Load Requirements, in Lieu of Readily Available, Low-Cost, Non-Affiliate Power

29.

ENO has met a substantial portion of its load requirements by
generating power at its Michoud power generation facility, situated
in Orleans Parish.  ENO'S self-generated power is and has been, on
average, the most expensive power sold to ENO's captive ratepayers.
For example, during the three-year period May, 1988 through April,
1991, the net cost of ENO's self-generated power was approximately
$21.95 per mWh.  During that same period, however, ENO purchased
power from non-affiliates at an average cost of only $18.80 per
mWh, or approximately 15% less than ENO's self-generated power.

30.

Likewise, during the three-year period ending June 30, 1994,
the cost of ENO's self-generated power was approximately $22.03 per
mWh, while the cost of power purchased by ENO from non-affiliates
was only $17.82 per mWh.  Despite the availability of low-cost non-
affiliate power, ENO continued to generate high-cost power to meet
a significant portion of its load requirements.  In fact, even as
the cost of non-affiliate power decreased, ENO actually increased
its output of self-generated power, as a percentage of total load,
from 34% during the three-year period ending June 30, 1991, to 37%
during the three-year period ending June 30, 1994.  Although in
some cases, transmission and generation constraints may justify the
generation of power at prices greater than that of power available

- 11 -

from other sources, ENO has not shown that its decision to generate power at the Michoud facility is based on anything other than self-serving economic criteria.

31.

Based upon the difference in the average cost of ENO-generated power and the average cost of readily available non-affiliate power actually purchased by ENO, ENO ratepayers were overcharged approximately $70 million, exclusive of interest, during the period 1986 through 1997.

### Improper Inclusion of Non-Fuel
### Items, Including Those Above

32.

The illegal charges described in Paragraphs 21 through 31 above are merely illustrative, and they do not comprise the entirety of the overcharges that should be returned to plaintiffs and the class.

33.

By failing to submit for full City Council review and approval the purported costs included in ENO's fuel adjustment clauses, and/or by including purported costs which were not prudently incurred, which produced unjust or unreasonable rates, or which were otherwise improperly included under the guise of direct fuel and generation-dependent costs, defendants ENO and Entergy systematically manipulated and artificially inflated the items and amounts of purported costs passed through to ENO's customers, including the plaintiffs and the members of the class, resulting in substantial overcharges for electricity in excess of rates properly approved by the City Council.

### ENO's Illegal and/or Imprudent Purchases Of
### High-Cost Electric Power From Its Affiliates

34.

Effective January 1, 1983, Entergy's subsidiaries Entergy Arkansas, Inc. (formerly Arkansas Power & Light Company, Inc.), ENO (formerly New Orleans Public Service Inc.), Entergy Louisiana, Inc. (formerly Louisiana Power & Light Company, Inc.), Entergy

- 12 -

Mississippi, Inc. (formerly Mississippi Power & Light Company, Inc.) (collectively, the "operating companies"), and ESI (formerly Middle South Services, Inc.) entered into an agreement relating to the sharing of generating capacity and other power resources (the "System Agreement").

35.

The purpose of the System Agreement was ostensibly to enable ENO and the other operating companies to furnish "reliable service to customers at the lowest cost consistent with sound business practice." Accordingly, the System Agreement was entered into for the benefit of plaintiffs and the class. The plaintiffs and the class have a right and expectation that the System Agreement would be implemented fairly and equitably for their benefit.

36.

At all times pertinent hereto, substantial amounts of electric power adequate to serve the needs of plaintiffs and the class have been readily available from non-affiliates (i.e. companies not owned by Entergy) to ENO at prices substantially lower than those ENO paid to its affiliates and passed through to plaintiffs and the class. For example, during the three-year period ending June 1994, the cost of power purchased by ENO from its affiliates averaged $20.76 per mWh during the review period, whereas the net cost of power purchased from non-affiliates averaged only $17.82 per mWh during that same period.

37.

ENO has not purchased the low-cost electric power which has been and is readily available from non-affiliates; instead it continues to purchase the majority of its load requirements from its affiliates. ENO has never obtained or even sought approval from the City Council of the propriety, prudence, or lawfulness of purchasing high-cost electric power from its affiliates in lieu of purchasing lower-cost power from non-affiliates, at the times it actually made the high-cost purchases, or of the inclusion in its fuel adjustment clause filings of costs related to those purchases from affiliates.

- 13 -

38.

ENO's decisions to purchase electric power from its
affiliates, at the times it made those purchases, have been based
ostensibly on the so-called "incremental" costs calculated by ESI,
and purportedly incurred by ENO's affiliates to generate this
power. Defendant Entergy claims these incremental costs are lower
than costs of electric power available from non-affiliates. But
the so-called incremental costs, as calculated by the defendants
and/or their affiliates, are purely hypothetical and do not reflect
the prices ENO has actually paid for power and passed through to
its ratepayers. Indeed, ENO, ESI and/or Entergy have consciously
and intentionally understated the incremental prices in order to
obfuscate the excessive costs of ENO's power purchases from
affiliates, and to hinder, frustrate, delay, and/or avoid review
by the City Council of the reasonableness of ENO's power purchases
from the Entergy system pool.

39.

Defendant EPI is a wholly-owned subsidiary of defendant
Entergy and an affiliate of defendant ENO. EPI is an exempt
wholesale generator of electric power which owns two power
generation units situated in the State of Arkansas. Both of these
power generation units were exclusively or partially owned by
Entergy Arkansas, Inc. ("Entergy Arkansas"), another wholly-owned
operating subsidiary of defendant Entergy and an affiliate of
defendants ENO, ESI, and EPI.

40.

To increase the profitability of Entergy and EPI, and with the
full knowledge and consent of and/or without objection by Entergy
and/or ESI, Entergy Arkansas purchases electric power from EPI at
prices substantially higher than those charged by non-affiliates.
On information and belief, Entergy Arkansas then transmits this
power to the Entergy System "pool" established under the System
Agreement and/or other agreements between the operating companies,
whereupon it is purchased by ENO for resale to ratepayers. For
example, in 1996 Entergy Arkansas purchased power from EPI at a

- 14 -

price of $0.0252 per kWh -- EPI's purported incremental cost of production. However, during that same period the average unit cost of non-firm purchases by Entergy Arkansas and ENO from non-affiliates for electric power was reported to be only $0.0197 per kWh, materially lower than the price for power paid to EPI.

41.

The high-cost electric power from affiliates is itself priced even higher than EPI's cost to generate that power. For example, in 1996, EPI's weighed average cost of producing electric power sold to ENO under the System Agreement was $0.0229 per kWh. Nevertheless, with the full knowledge and consent of and/or without objection by Entergy and/or ESI, ENO purchased electric power generated by EPI at a price to ENO of $0.0252 per kWh. Had ENO purchased electric power generated by EPI at its weighted average cost of producing power of $0.0229 per kWh, plaintiffs and the class would have paid substantially less for electric power. Upon information and belief, ENO has continued to purchase electric power generated by EPI at rates above EPI's weighted average cost to generate that power, with full knowledge that it is not obtaining power for its ratepayers at the lowest practicable cost.

42.

Upon information and belief, during the example period of 1996, at the same time ENO was purchasing electric power generated by EPI at a price to ENO of $0.0252 per kWh, EPI, for its own benefit (and for the benefit of and with the knowledge and consent of, and/or without objection from, Entergy and/or ESI), was generating and selling electric power in the wholesale market at prices substantially lower than $0.0252 per kWh. Upon information and belief, EPI continues to sell power in the unregulated wholesale market at prices which are substantially lower than those paid by ENO.

43.

ENO, with the knowledge and consent of and/or without objection by Entergy and/or ESI, has purchased high-cost electric power generated by its unregulated affiliate EPI in order to

guarantee a market for EPI's electric power, to subsidize operations at EPI's power generation plants, and to shield EPI from the impact of competition in the open market, all to the detriment of ENO's ratepayers.

44.

On information and belief, for the period 1990 through 1997, the total overcharges to ratepayers caused by the illegal or wrongful conduct described in Paragraphs 34 through 44 hereof is estimated to be at least $52,000,000.00, exclusive of interest. The additional amounts attributable to other periods is not yet known.

45.

ENO's failure and/or refusal to purchase electric power at rates equal to the lesser of (a) EPI's costs to generate said power, or (b) the prices charged by non-affiliates which generate and/or sell electric power, is unjust and imprudent, and has caused plaintiffs and the class to pay rates which are illegal, unduly discriminatory, and in excess of rates approved by the City Council, is in breach of the defendants' contractual and fiduciary duties to plaintiffs and the class, and in violation of the ordinances, resolutions, rules, orders, regulations, and policies of the City Council and applicable Louisiana law.

### ENO Has Failed To Refund Interest Due On Overbilling To Ratepayers, In Direct Violation Of A Resolution Issued By The New Orleans City Council

46.

ENO's electric rate schedules have a fuel adjustment clause which provides that fuel costs shall be calculated on a current month's basis for the purpose of determining ENO's fuel cost adjustment. In order to make the fuel cost adjustment on a current basis, ENO must estimate its monthly fuel costs before such costs are actually incurred.

47.

ENO is required to adjust its fuel costs to reflect any over- or under-recovery of fuel costs, based upon the difference between

ENO's estimated fuel costs and the fuel costs actually incurred.
These adjusted fuel costs are to be reflected on the bills sent to
ENO's customers in the second month after ENO makes its estimates.

48.

The City Council has recognized that, to the extent ENO
overestimates its fuel costs, ENO's ratepayers are overbilled.  The
City Council has further recognized that, when such overbillings
occur, ENO's electric ratepayers must wait for a period of
approximately two months before receiving any credits or refunds
from ENO, during which time they are uncompensated for the time
value of their overpayments to ENO.

49.

Thus, in 1975, the City Council enacted Resolution R-75-118,
which ordered that, where ENO overbills its ratepayers for fuel
costs, ENO shall "be required to include 60 days of interest on the
amount of any such overbillings in the computation of said
overbilling refunds arising our of the operation of the fuel
adjustment clause."  The resolution further ordered that "the rate
of annual interest to be used in the computation of the aforesaid
60 days of interest on the amount of any such overbillings shall be
the prime commercial rate charged by The Chase Manhattan Bank in
New York City on the last business day of that bank for the
calendar month in which said overbilling occurs."

50.

ENO has consistently overbilled its ratepayers millions of
dollars per month for electric service, but has knowingly and
systematically failed or refused to pay ratepayers any interest on
the amount of those overbillings, as required by Resolution No. R-
75-118 and other applicable law.  Instead, ENO has retained these
monies for its own purposes, allowing it to earn substantial but
illegal profits therefrom, to the detriment of its ratepayers.
Upon information and belief, the unrefunded interest belonging to
ratepayers, and the illegal profits earned by ENO thereon, have
exceeded $150,000 per year.

- 17 -

51.

ENO has been unjustly and unlawfully enriched as a consequence of its willful and systematic violations of Resolution R-75-118. ENO wrongfully withheld from ratepayers millions of dollars of unpaid interest on its overbillings, and has unfairly and/or illegally profited from the use of these unrefunded sums. In order to adequately compensate ENO's ratepayers for the loss of monies rightfully belonging to them, ENO must refund to its ratepayers the unpaid interest accrued on its overbillings, and disgorge all of the illegal fruits it has derived therefrom, including profits earned on those sums.    Alternatively, ENO should repay its ratepayers the unpaid interest accrued on the overbillings, together with compound interest thereon, to fairly compensate ratepayers for ENO's unjust and unlawful enrichment.

**Ratepayers Were Harmed By Defendants' Breaches Of The
Regulatory Policies of the New Orleans City Council
And By Defendants' Violations of Louisiana Law**

52.

Thus, by means of their illegal and/or wrongful price fixing scheme, in what should otherwise have been a lawfully regulated monopoly, and/or by their manipulation of the price of electric power sold pursuant to the System Agreement, and/or by their manipulation of rates, purported costs, and the fuel adjustment clause filings, defendants have attempted to create and have created an illegal monopoly on electric power sold to plaintiffs and the class within the relevant market, have illegally restrained trade or commerce within the State of Louisiana and specifically within the relevant market, all in violation of Louisiana antitrust law.

53.

Defendants' conduct, and the purpose and effect of that conduct, were and are in violation of, and/or were and are an attempt to violate, Louisiana antitrust law, including (without limitation) La. R.S. 51:122, 123, and 124.   Such conduct has injured plaintiffs and the members of the class, and has caused

them ascertainable losses of money, including overcharges, and damages, including treble damages.

54.

Defendants' systematic manipulation and artificial inflation of the purported costs of electric power produced by affiliates and sold to ENO, has resulted in substantial overcharges for electricity in violation of applicable rules, orders, regulations, and policies of the City Council, in breach of ENO's obligations to plaintiffs and the class as third-party beneficiaries of the System Agreement, in breach of ENO's duty to provide reliable service to plaintiffs and the class at the lowest cost consistent with sound business practice, and in violation of applicable Louisiana law.

55.

Further, each of the plaintiffs and the members of the class is a third-party beneficiary of the franchise agreement embodied in Ordinance No. 6822, Commission Council Series (the "Settlement Ordinance"), which established ENO's exclusive right to provide electric and gas utility services to the citizens of Orleans Parish, each plaintiff and class member has been injured by defendants' breaches of the Settlement Ordinance including defendants' failure to obtain City Council review and approval as aforesaid, and/or by defendants' inclusion of purported costs which should not have been included in calculating fuel adjustments, and which wrongfully inflated the charges passed through to ratepayers.

56.

Still further, defendants owed to each of the plaintiffs and the members of the class a fiduciary duty to include in the fuel adjustments only those items and amounts which were properly includable, and which represented direct fuel and generation-dependent costs which were prudently incurred, and which would not produce unjust or unreasonable rates. Defendants' conduct breached those fiduciary duties, and such breaches damaged each of the plaintiffs and members of the class.

- 19 -

57.

Defendants' acts and omissions also constituted fraudulent, negligent, or intentional misrepresentation of, or concealment or suppression of or failure to disclose, the information material to the rates and charges for electricity and electrical service provided to the plaintiffs and the members of the class, and/or were committed through negligence, fraud, fault, and/or error, and/or were in breach of defendants' contractual or quasi-contractual obligations, and/or unjustly enriched defendants at the expense of and to the detriment of plaintiffs and the class, entitling plaintiffs and the class to all remedies and relief provided by law, including rescission, restitution, damages, treble damages, penalties, attorneys' fees, interest, costs, and declaratory and injunctive relief, including (without limitation) injunction pursuant to La. R.S. 51:129.

58.

Plaintiffs did not know of the defendants' acts and conduct at issue herein more than one year prior to the filing of this action. Defendants wrongfully concealed, and did not fully and accurately disclose, their manipulation and inflation of purported costs passed through to the ratepayers.

59.

Defendant EPI is a foreign corporation which transacted business in the State of Louisiana, or which committed acts or omissions in Louisiana, or alternatively, outside the State, which caused damages in this State, as alleged hereinabove. The claims and causes of action of the plaintiffs and the class against EPI arise out of contacts the defendant had with the State of Louisiana. Consequently, EPI is amenable to service of process under the Louisiana long-arm statute.

60.

Plaintiffs file this petition and invoke the jurisdiction of this Honorable Court solely and exclusively under the laws of the State of Louisiana and not in reliance on any federal law, and no federal claims are asserted herein. If any Louisiana law otherwise

applicable has been super-preempted by federal law (which is denied), plaintiffs do not invoke or rely upon any such preempted Louisiana law, and no relief is sought on the basis thereof.

61.

Plaintiffs are entitled to and demand trial by jury of all issues herein.

WHEREFORE, plaintiffs respectfully pray that this action be certified as a class action, and that after due proceedings are had, there be judgment in favor of each of the plaintiffs, individually and on behalf of the class of all others similarly situated, and in favor of the class and each member of the class, and against defendants, Entergy New Orleans, Inc., formerly known as New Orleans Public Service Inc., Entergy Corporation, formerly known as Middle South Utilities, Inc., Entergy Services, Inc., formerly known as Middle South Services, Inc., and Entergy Power, Inc., jointly, severally, and in solido, as follows:

(A)  For restitution of each plaintiff's and each class member's ascertainable losses of money, including overcharges, and for such amounts of damages as may be reasonable in the premises, including treble damages, plus interest at the legal rate from the date or dates of the obligations sued upon, or alternatively, from date of judicial demand, reasonable attorneys' fees, and all costs;

(B)  For judgment declaring which items and amounts of costs may be included, and which may not be included, in the fuel clause recovery mechanism through the fuel adjustment clause filings of defendant Entergy New Orleans, Inc., consistent with the ordinances, resolutions, rules, orders, and policies of the Council of the City of New Orleans;

(C)  For judgment, pursuant to La. R.S. 51:129 and other law, preliminarily and permanently enjoining defendants and any of them, and their agents, representatives, officers, and employees, and all other persons acting in concert or participation with them or any of them, from including or causing to be included in the fuel cost recovery mechanism, or in the fuel adjustment clause filings of Entergy New Orleans, Inc., any costs to be passed through to

ratepayers other than direct fuel and generation-dependent costs
prudently incurred and eligible for recovery through the fuel
clause consistently with the rules and policies of the Council of
the City of New Orleans, and enjoining said persons from committing
any further violations of law; and

>    (D)  For all general and equitable relief.

Murray, Darnell & Associates, L.L.C.
**EDWIN R. MURRAY (No. 17069)**
**MICHAEL C. DARNELL (No. 4554)**
1540 North Broad
New Orleans, Louisiana 70119
Telephone: (504) 945-0042

By: _____
Edwin R. Murray (No. 17069)

**and**

Roedel, Parsons, Koch, Frost,
   Balhoff & McCollister
**LARRY M. ROEDEL (No.11385)**
**J. KENTON PARSONS (No. 10377)**
**C.J. BLACHE (No. 3090)**
Jefferson-Brentwood Building
8440 Jefferson Highway, Suite 301
Baton Rouge, Louisiana 70809-7652
Telephone: (225) 929-7033

By: _____
J. Kenton Parsons (No. 10377)

**and**

Domengeaux, Wright & Roy
**BOB F. WRIGHT (No. 13691)**
**JAMES PARKERSON ROY (No. 11511)**
556 Jefferson Street
Jefferson Towers, Suite 500
P.O. Box 3668
Lafayette, Louisiana 70502-3668
Telephone: (318) 233-3033

By: _____
Bob F. Wright (No. 13691)

**and**

Barkley & Thompson, L.C.
**WALTER C. THOMPSON, JR. (No. 8739)**
**MARK P. SEYLER (No. 17422)**
**JAMES MONROE WHITE, III (No. 20448)**
Suite 2350
1515 Poydras Street
New Orleans, Louisiana 70112
Telephone: (504) 595-3350

By: _____
Walter C. Thompson, Jr. (No. 8739)
**ATTORNEYS FOR PLAINTIFFS**

- 22 -

**PLEASE SERVE:**

(1)   Entergy New Orleans, Inc., formerly
       known as New Orleans Public Service Inc.
    through its registered agent:
       Renee W. Masinter  **(personal service)**
       26th Floor
       639 Loyola Avenue
       New Orleans, Louisiana  70113

(2)   Entergy Corporation, formerly known
       as Middle South Utilities, Inc.,
    through its registered agent:
       Michael G. Thompson   **(personal service)**
              <u>or</u>
       Christopher T. Screen **(personal service)**
       26th Floor
       639 Loyola Avenue
       New Orleans, Louisiana  70113

(3)   Entergy Services, Inc., formerly known
       as Middle South Services, Inc.,
    through its registered agent:
       Christopher T. Screen **(personal service)**
       26th Floor
       639 Loyola Avenue
       New Orleans, Louisiana  70113

    and

    <u>PLEASE ISSUE</u> long-arm citation and petition for service to:

(4)   Entergy Power, Inc.,
    through its registered agent:
       W. Jackson Williams
       111 Center Street
       Little Rock, Arkansas 72201



SCANNED

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO.                         DIVISION "   "              DOCKET NO.
                            (SECTION     )

REVEREND C.S. GORDON, JR., J. MICHAEL MALEC,
DARRYL MALEK-WILEY, WARREN WEBB, SR.,WARREN WEBB,
and MAISON ST. CHARLES,L.L.C. d/b/a
QUALITY INN MAISON ST. CHARLES

versus

ENTERGY NEW ORLEANS, INC.,
ENTERGY CORPORATION, ENTERGY SERVICES, INC. and
ENTERGY POWER, INC.

Filed: _____        _____
                                        Deputy Clerk

## J U R Y   O R D E R

LET there be trial by jury upon applicants for jury trial complying with the requirements of law.

New Orleans, Louisiana, this ___ day of _____, 1999.

_____
                    JUDGE

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

06-0846

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Reverend C.S. Gordon Jr.

**DEFENDANTS**
Entergy N.O. Inc.

**SECT. K MAG. 1**

(b) County of Residence of First Listed Plaintiff
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)

Attorneys (If Known)
R. Patrick Vance

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☑ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☐ 1 Original Proceeding
- ☑ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):

JUDGE

DOCKET NUMBER

DATE 2/21/06

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____